E UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | **Case No. 21-cr-302-CRC** |
| v. | : | |
| | : | |
| JOHN CLARENCE WILKERSON IV, | : | |
| | : | |
| Defendant. | : | |

### GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through its attorney, the Acting United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. For the reasons set forth herein, the government requests that this Court sentence Defendant to 60 days of home detention, 3 years' probation, 60 hours of community service, and $500 in restitution.

### I.      Introduction

John Clarence Wilkerson IV participated in the January 6, 2021 attack on the United States Capitol—a violent attack that forced an interruption of the certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential election, injured more than one hundred law enforcement officers, and resulted in more than a million dollars' worth of property damage.

Wilkerson pleaded guilty to one count of violating 40 U.S.C. § 5104(e)(2)(G), Parading, Demonstrating and Picketing in the Capitol Building. For the reasons set forth below, the government recommends a sentence of 3 years' probation with a condition of 60 days of home detention, 60 hours of community service, and $500 in restitution. A fully probationary sentence is not appropriate in this case because Wilkerson (1) was among the first rioters to approach the Capitol; (2) observed violence on his way into the Capitol and (3) made statements on social media

1

bragging about his conduct and showing a lack of remorse.  Specifically, on January 6, 2021, Wilkerson posted videos stating it was a "good day" because he had made it inside the Capitol. On January 10, 2021, Wilkerson sent a message on blaming the Capitol Police, not the rioters, for the violence that occurred.  On January 13, 2021, Wilkerson sent another Facebook message to the effect that he hoped a military operation would continue the goals of the rioters.

The Court must also consider that Wilkerson's conduct on January 6, like the conduct of thousands of other persons, took place in the context of a large and violent riot that relied on numbers to overwhelm law enforcement, breach the Capitol, and disrupt the proceedings.  At several points, Wilkerson could have, but chose not to, separate from the other rioters.  But for his actions alongside so many others, the riot likely would not have disrupted for several hours the Congressional certification of the 2020 Electoral College Vote.  Here, the need for both specific and general deterrence renders a significant probationary sentence with a term of home detention and community service both necessary and appropriate.

## II.    Factual and Procedural Background

### The January 6, 2021 Attack on the Capitol

To avoid exposition, the government refers to the general summary of the attack on the U.S. Capitol.  *See* ECF 1, attachment 1 (Statement of Offense).  As this Court knows, a riot cannot occur without rioters, and each rioter's actions – from the most mundane to the most violent – contributed, directly and indirectly, to the violence and destruction of that day.  With that backdrop we turn to Defendant's conduct and behavior on January 6.

### Wilkerson's Role in the January 6, 2021 Attack on the Capitol

On January 6, 2021, Defendant traveled to Washington, D.C., from his home in Maryland to attend the "Stop the Steal" rally.  At or about 12:45 p.m., as preparations for the proceedings

described above were underway in the House and Senate, a large crowd gathered to the west of the U.S. Capitol around the Peace Monument, located in the Pennsylvania Avenue, NW and 1st Street, NW, roundabout. This location was commonly referred to as "Peace Circle" by U.S. Capitol Police ("USCP") officers and is shown in the image below by the red arrow.



The crowd then moved southeast to the threshold of the sidewalk that connects Peace Circle to the U.S. Capitol Building, commonly referred to as the "Pennsylvania Ave. Walkway" by USCP officers. Metal barricades had been put in place by U.S. Capitol Police Officers. The metal barricades were intended to keep the public away from the Capitol building and the Congressional proceedings underway inside.

At approximately 12:53 p.m., members of the crowd pushed the barricades to the ground, injuring at least one USCP officer.  The crowd, Wilkerson among them, walked over the fallen barricades and proceeded up the Pennsylvania Ave. Walkway towards the Capitol.  In the screenshot below taken from publicly available video, Wilkerson (circled in red) can be seen walking with the crowd just after the barricade had fallen.



Wilkerson joined other rioters on the West Side of the Capitol, where he saw the USCP trying to defend the Capitol.  Wilkerson saw other rioters attacking police with pepper spray and weapons and eventually breaking through the police line at that location as well.  In the image below, Wilkerson (circled in red) can be seen holding up his cellphone as rioters confront law enforcement.



After rioters broke through this line of USCP officers, Wilkerson climbed with other rioters up the steps on the West side of the Capitol, through scaffolding that had been set up for the Inauguration and then through the canvas wrapping of scaffolding that had been torn away by other rioters.  In the screenshot below, Wilkerson (circled in red) can be seen climbing through the scaffolding.



Upon approaching the Senate Wing door, Wilkerson could see broken glass littering the ground.  That is because, as shown in the screenshot below from Capitol security video, approximately 8 minutes before Wilkerson walked through, rioters wielding weapons and stolen riot shields shattered open the windows, climbed inside the building, and kicked open the door. The screenshot below from Capitol security video shows the inside of the Capitol just after the Senate Wing entry was breached.



At approximately 2:21 p.m., Wilkerson stepped over the broken glass and entered the Capitol Building through the Senate Wing door from the North West Terrace, as a piercing alarm sounded throughout the area.   In the screenshot below, Wilkerson, circled in red, can be seen walking through the Senate Wing door.



From there, Wilkerson traveled through the Crypt on the ground floor of the Capitol building, as seen in the screenshot below from Capitol security video (circled in red).



Wilkerson briefly walked down the steps to the Visitor's Center before returning to the Crypt.  At approximately 2:35 p.m., Wilkerson (circled in red below) returned to his entry point near the Senate Wing Door and exited through a window as directed by Capitol Police.  In total, he had been in the Capitol for approximately 14 minutes.



After leaving the Capitol Building, Wilkerson posted a video to the social media platform Snapchat in which he bragged about having been inside the Capitol.  *See* PSR ¶ 17.  Later in the

day on January 6, 2021, Wilkerson posted another video in which he stated "today was a good

day, we got inside the Capitol."  PSR ¶ 18.[1]  Wilkerson also implied that he had taken pictures

inside the Capitol, stating that he would not be posting such pictures, "for obvious reasons."  *Id.*

On January 10, 2021 at approximately 1:03 p.m., Wilkerson sent a message on Facebook

to another Facebook user stating in substance that the riot was peaceful until the Capitol Police

started using violence:

> From: 100010524229308 Jace Leashin
>
> I was there at the capital and saw it all with my own eyes. There were Hispanic, Asian, black, white and a big group of LGBT holding holding flags right at the capital steps. It was totally peaceful until the capital police started shooting flash bangs, tear gas, paint balls and pepper spray cannons at us!!!!
>
> You see nothing about the diverseness of people that was there.
>
> I will never believe another word on any subject that a major news outlet broadcasts ever again. They are totally twisting it to fit their narrative. It's complete bullshit what they're saying.
>
> I will be at every patriot rally on the east coast until this is over and it has just begun. This evil machine must be burned to the ground!!!!
>
> **Status:** Sent
> **Platform:** Mobile
>
> 1/10/2021 6:03:20 PM(UTC+0)

Source Extraction:
Legacy
Source Info:
00008020-000574980C22402E_files_partial-afu.zip/private/var/mobile/Containers/Shared/AppGroup/158A81FA-9B72-4C9E-AB74-EBA2F1F9E786/lightspeed-100010524229308.db : 0x5B99B7 (Table: messages, Size: 12374016 bytes)

On January 13, 2021 at approximately 9:00 a.m., Wilkerson sent another Facebook message to a

Facebook user stating in substance that he hoped the military would soon make a "power play"

to continue the job started by the rioters:

---

[1] The information about these videos was provided by an individual who knows Wilkerson.  The FBI was unable to recover these videos from social media.



*The Charges and Plea Agreement*

On March 12, 2021, Wilkerson was charged by complaint with violating 18 U.S.C. §§ 1752(a)(1) and 40 U.S.C. §§ 5104(e)(2).  On April 6, 2021, law enforcement officials  arrested him at his home in Maryland.  On April 14, 2021, the government charged him by a four-count Information with violating 18 U.S.C. §§ 1752(a)(1) and (2) and 40 U.S.C. §§ 5104(e)(2)(D) and (G).

On August 6, 2021, Wilkerson voluntarily interviewed with the FBI, admitted his conduct on January 6, 2021, and provided truthful information.

On August 31, 2021, Wilkerson pleaded guilty pursuant to a plea agreement to Count Four of the Information, charging him with a violation of 40 U.S.C. § 5104(e)(2)(G), Parading, Demonstrating, or Picketing in the Capitol Building. In that agreement, Wilkerson agreed to pay $500 in restitution.

## III.   Statutory Penalties

Wilkerson faces sentencing on a single count of violating 40 U.S.C.  § 5104(e)(2)(G).  As noted by the plea agreement and the U.S. Probation Office, Wilkerson faces up to six months of

imprisonment and a fine of up to $5,000.[2]  Wilkerson must also pay $500 in restitution under the terms of his plea agreement.  *See* 18 U.S.C. § 3663(a)(3); *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008).  As this offense is a Class B Misdemeanor, the Sentencing Guidelines do not apply.  18 U.S.C. § 3559; U.S.S.G. §1B1.9.

IV.    **Sentencing Factors Under 18 U.S.C. § 3553(a)**

In this misdemeanor case, sentencing is guided by 18 U.S.C. § 3553(a), which identifies the factors a court must consider in formulating the sentence.  Some of those factors include: the nature and circumstances of the offense, § 3553(a)(1); the history and characteristics of the defendant, *id.*; the need for the sentence to reflect the seriousness of the offense and promote respect for the law, § 3553(a)(2)(A); the need for the sentence to afford adequate deterrence, § 3553(a)(2)(B); and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.  § 3553(a)(6).

A.  **The Nature and Circumstances of the Offense**

The attack on the U.S. Capitol, on January 6, 2021 is a criminal offense unparalleled in American history.  It represented a grave threat to our democratic norms; indeed, it was the one of the only times in our history when the building was literally occupied by hostile participants. By its very nature, the attack defies comparison to other events.  So, too, does the conviction this defendant now faces.  Picketing, demonstrating, or parading at the Capitol as part of the riot on January 6 is not like picketing at the Capitol that was not part of a violent riot.

While each defendant should be sentenced based on their individual conduct, as we now discuss, this Court should note that each person who entered the Capitol on January 6 without

---

[2] Because defendant has pled guilty to a petty offense, a term of supervised release is not authorized. *See* 18 U.S.C. §§ 19, 3583(b)(3).

authorization did so under the most extreme of circumstances.  As they entered the Capitol, they would—at a minimum—have crossed through numerous barriers and barricades and heard the throes of a mob.  Depending on the timing and location of their approach, they also may have observed extensive fighting with law enforcement officials and  smelled chemical irritants in the air. No rioter was a mere tourist that day.  *See United States v. Matthew Mazzocco*, 1:21-cr-00054 (TSC), Tr. 10/4/2021 at 25 ("A mob isn't a mob without the numbers. The people who were committing those violent acts did so because they had the safety of numbers.") (statement of Judge Chutkan).

Additionally, while looking at Wilkerson's individual conduct, we must assess such conduct on a spectrum.  This Court, in determining a fair and just sentence on this spectrum, should look to a number of critical factors, to include: (1) whether, when, how the defendant entered the Capitol building; (2) whether the defendant engaged in any violence or incited violence; (3) whether the defendant engaged in any acts of destruction; (4) the defendant's reaction to acts of violence or destruction; (5) whether during or after the riot, the defendant destroyed evidence; (6) the length of the defendant's time inside of the building, and exactly where the defendant traveled; (7) the defendant's statements in person or on social media; (8) whether the defendant cooperated with, or ignored, commands from law enforcement officials; and (9) whether the defendant  demonstrated sincere remorse or contrition. While these factors are not exhaustive nor dispositive, they help to place each defendant on a spectrum as to their fair and just punishment.

In this case, Wilkerson left the rally early and was among the first to march on the Capitol. He passed through multiple points where rioters had overcome USCP officers, knocking down barricades and damaging property.  He watched the rioting on the West Plaza and still chose to walk up the steps through the scaffolding towards the Senate Wing doors.  As he entered, he saw

the broken glass at his feet and he heard the piercing alarm sounding throughout the Capitol.  He took videos inside the Capitol and stayed for approximately 14 minutes.

After the riots, Wilkerson posted videos he had taken inside the  Capitol and sent two messages over Facebook that demonstrated a lack of remorse for his actions.  His message on January 10, 2021 blamed the Capitol Police for the violence that had occurred.  His message on January 13, 2021 expressed a wish that the military would finish the job started by the rioters and disrupt the election process.

On August 6, 2021 Wilkerson voluntarily submitted to an interview with the FBI and told them in detail about his actions that day.

Because Wilkerson was among the first to approach the Capitol, observed the violence and destruction first-hand, and nevertheless chose to enter the Capitol, and because his post January 6 messages indicate a lack of remorse, a fully probationary sentence is inappropriate.

### B.  The History and Characteristics of the Defendant

As set forth in the PSR, Wilkerson's criminal history consists mostly of traffic infractions as well as a conviction for Driving While Impaired by Alcohol.  If the Sentencing Guidelines did apply to his offense of conviction, he likely would have zero criminal history points, resulting in a criminal history category of I.  USSG  §§ 4A1.1, 4A1.1(c) & n.3; 4A1.2(c)(2), Ch. 5, Pt. A.

The PSR also notes that in November 2019, Wilkerson was found asleep in his vehicle by the Baltimore County police, with his foot on the brake and the car in the drive gear.  When the officer attempted to wake Wilkerson, he became combative and attempted to flee.  PSR ¶  37. While this conduct led only to a traffic citation, in the context of the instant offense, it raises additional concerns about Wilkerson's attitude towards law enforcement.

The government is not aware of Wilkerson having an association with any extremist groups, promoting violence, or engaging in any other criminal conduct. The government has been informed that Wilkerson has been compliant with the conditions of release.

The government also notes that Wilkerson expressed an interest in pleading guilty early and acknowledged his conduct in an interview with the FBI. When recommending an appropriate sentence, the government gives significant weight to a defendant's early resolution of a case.

### C.  The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

The attack on the U.S. Capitol building and grounds was an assault on the rule of law. "The violence and destruction of property at the U.S. Capitol on January 6 showed a blatant and appalling disregard for our institutions of government and the orderly administration of the democratic process."[3] As with the nature and circumstances of the offense, this factor supports a sentence of incarceration, as it will in most cases, including misdemeanor cases, arising out of the January 6 riot.  *See United States v. Joshua Bustle and Jessica Bustle*, 21-cr-238-TFH, Tr. at 3 ("As to probation, I don't think anyone should start off in these cases with any presumption of probation. I think the presumption should be that these offenses were an attack on our democracy and that jail time is usually -- should be expected") (statement of Judge Hogan). Although this factor weighs in favor of incarceration, the balance of the other § 3553(a)(3) factors described herein support the government's recommendation of a sentence of probation with a condition of home detention.

---

[3] Federal Bureau of Investigation Director Christopher Wray, Statement before the House Oversight and Reform Committee (June 15, 2021), available at https://oversight.house.gov/sites/democrats.oversight.house.gov/files/Wray%20 Testimony.pdf

### D.  The Need for the Sentence to Afford Adequate Deterrence

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this defendant.  18 U.S.C. § 3553(a)(2)(B-C), *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010).  The demands of general deterrence weigh in favor of incarceration, as they will for nearly every case arising out of the violent riot at the Capitol.  Indeed, general deterrence may be the most compelling reason to impose a sentence of incarceration.  The violence at the Capitol on January 6 was cultivated to interfere, and did interfere, with one of the most important democratic processes we have: the peaceful transfer of power to a newly elected President.  As noted by Judge Moss during sentencing, in *United States v. Paul Hodgkins*, 21-cr-188-RDM:

> [D]emocracy requires the cooperation of the governed.  When a mob is prepared to attack the Capitol to prevent our elected officials from both parties from performing their constitutional and statutory duty, democracy is in trouble.  The damage that [the defendant] and others caused that day goes way beyond the several-hour delay in the certification.  It is a damage that will persist in this country for decades.

Tr. at 69-70.  Indeed, the attack on the Capitol means "that it will be harder today than it was seven months ago for the United States and our diplomats to convince other nations to pursue democracy. It means that it will be harder for all of us to convince our children and our grandchildren that democracy stands as the immutable foundation of this nation."  *Id.* at 70.

The gravity of these offenses demand deterrence.  This was not a protest.  *See id.* at 46 ("I don't think that any plausible argument can be made defending what happened in the Capitol on January 6th as the exercise of First Amendment rights.").  And it is important to convey to future potential rioters—especially those who intend to improperly influence the democratic process—

14

that their actions will have consequences.  There is possibly no greater factor that this Court must consider.

Defendant's words in the aftermath of January 6 highlight the need for specific deterrence. He bragged about his actions, calling it a "good day."  He blamed the police, not the rioting mob, for the violence, and he expressed hope that the rioters' undemocratic aims would be furthered by a military operation.  These statements demonstrate a troubling lack of understanding regarding both the nature of the riots and how a democracy operates.  Of course, Wilkerson is free to hold and express any opinion he chooses.  The government refers to these statements for the purpose of demonstrating Wilkerson's intent during the Capitol Riot and the need for the Court's sentence to provide adequate deterrence against future criminal conduct.

At the same time, Wilkerson's limited conduct in the building, the lack of additional aggravating factors, and Wilkerson's compliance with conditions of release suggest that the need for deterrence in this case can be met with a term of probation with conditions of home detention and community service.

### E.  The Need to Avoid Unwarranted Sentencing Disparities

As the Court is aware, the government has charged hundreds of individuals for their roles in this one-of-a-kind assault on the Capitol, ranging from unlawful entry misdemeanors such as in this case, to assault on law enforcement officers, to conspiracy to corruptly interfere with Congress. Each offender must be sentenced based on their individual circumstances, but with the backdrop of the January 6 riot in mind.  Moreover, each offender's case will exist on a spectrum that ranges from conduct meriting a probationary sentence to crimes necessitating years of imprisonment.  The misdemeanor defendants will generally fall on the lower end of that spectrum, but misdemeanor breaches of the Capitol on January 6, 2021 were not minor crimes.  A probationary sentence should

not become the default.[4]   Indeed, the government invites the Court to join Judge Lamberth's admonition that "I don't want to create the impression that probation is the automatic outcome here because it's not going to be."  *United States v. Anna Morgan-Lloyd*, 1:21-cr-00164 (RCL), Tr. 6/23/2021 at 19; *see also United States v. Valerie Ehrke*, 1:21-cr-00097 (PFF), Tr. 9/17/2021 at 13 ("Judge Lamberth said something to the effect . . . 'I don't want to create the impression that probation is the automatic outcome here, because it's not going to be.' And I agree with that. Judge Hogan said something similar.") (statement of Judge Friedman).

The government and the sentencing judges have already begun to make meaningful distinctions between offenders.  Those who engaged in felonious conduct are generally more dangerous, and thus, treated more severely in terms of their conduct and subsequent punishment. Those who trespassed, but engaged in aggravating factors, merit serious consideration of institutional incarceration.  Those who trespassed but engaged in less serious aggravating factors, deserve a sentence more in line with minor incarceration or home detention.

The government submits that the instant case falls into the latter home detention category, and is akin to cases such as *United States v. Jessica Bustle*, 21-CR-238-TFH, and *United States v. Bennett*, 21-CR-227-JEB, where the Government recommended, and the sentencing courts imposed, sentences of probation with conditions of home detention and community service.  These cases, like the instant case, involved aggravating factors such as the defendants' awareness of

---

[4] Early in this investigation, the government made a very limited number of plea offers in misdemeanor cases that included an agreement to recommend probation, including in *United States v. Anna Morgan-Lloyd*, 1:21-cr-00164(RCL); *United States v. Valerie Elaine Ehrke*, 1:21-cr-00097(PFF); and *United States v. Donna Sue Bissey*, 1:21-cr-00165(TSC).  The government is abiding by its prior agreement to recommend probation in these cases. *Cf. United States v. Rosales-Gonzales*, 801 F.3d 1177, 1183 (9th Cir. 2015) (no unwarranted sentencing disparities under 18 U.S.C. § 3553(a)(6) between defendants who plead guilty under a "fast-track" program and those who do not given the "benefits gained by the government when defendants plead guilty early in criminal proceedings") (citation omitted).

violence against law enforcement and statements on social media indicating a lack of remorse.  At the same time, these prior cases, like the instant case, lack aggravating factors such as advance preparation, serious criminal history, extended time spent inside the Capitol, destruction of evidence, or direct confrontation with law enforcement.  Accordingly, a sentence of probation with a condition of 60 days home detention would not create any disparities with the sentences previously imposed in the Capitol breach cases.

**V.      Conclusion**

Sentencing requires the Court to carefully balance the § 3553(a) factors.  As explained herein, some of those factors support a sentence of incarceration and some support a more lenient sentence.  Balancing these factors, the government recommends that this Court sentence defendant to 3 years' probation with a condition of 60 days of home detention, 60 hours of community service, and $500 in restitution.  Such a sentence protects the community, promotes respect for the law, and deters future crime by imposing restrictions on his liberty as a consequence of his behavior, while recognizing his acceptance of responsibility.  It also allows continued monitoring of the defendant to deter similar conduct in the future.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY

ROBERT JUMAN
Assistant United States Attorney
Bar No. NJ 033201993
United States Attorney's Office, Detailee
555 Fourth Street, N.W.
Washington, DC 20530
Phone: (786) 514-9990
E-mail: Robert.juman@usdoj.gov

17